IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 15, 2010

## STATE OF TENNESSEE v. JAMIE W. STANFILL

**Direct Appeal from the Criminal Court for Sumner County**
**No. 2008-CR-598     Dee David Gay, Judge**

_____

**No. M2009-01902-CCA-R3-CD - Filed February 9, 2011**

_____

The Defendant, Jamie W. Stanfill, pled guilty to three counts of theft of property between $10,000 and $60,000, Class C felonies; one count of theft of property between $1000 and $10,000, a Class D felony; and five counts of burglary of a motor vehicle, Class E felonies. The Defendant agreed to a ten-year sentence, with the trial court to determine the manner of service of his sentence. After a hearing, the trial court ordered him to serve his sentence in confinement. The Defendant appeals, contending the trial court improperly denied his request for an alternative sentence. After a thorough review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

David Collins (at trial), Nashville, Tennessee; and John Chadwick Long (on appeal), Hendersonville, Tennessee, for the Appellant, Jamie W. Stanfill.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Clark B. Thornton, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and C. Wayne Hyatt, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

During the Defendant's plea submission hearing, the State set forth the following summary of the factual basis for the Defendant's guilty pleas:

The facts of this case would show, according to an affidavit filed by Lisa House of the Sumner County Sheriff's Department, on May 20th, 2008 the Sheriff's Office took reports from several victims regarding Victoria Place and Somerset Downs subdivisions in Hendersonville. The vehicles had been burglarized and stolen from these neighborhoods.

The victim Chelse Brown in Hendersonville reported that her 2003 Nissan 350 was stolen, valued at over $10,000. Jay Tharp of Hendersonville reported his vehicle was broken into and a 9-millimeter Smith & Wesson handgun in a black holster valued at $550 was stolen. Victim Holli Fee at Somerset Dam reported her vehicle had been broken into and $80 cash was stolen. Victim Jaclyn Beasley reported her vehicle had been broken into and her purse and contents were stolen. The victim Frank Francis of Stafford Court in Hendersonville reported his vehicle was broken into through breaking a window and prescription medication was stolen. Kristen Vance in Hendersonville reported her 2001 Chevrolet Tahoe was stolen, valued at over $10,000.

On May 30th the [D]efendant was interviewed by Officer Tim Bailey and also Detective House interviewed him at the Police Department where he admitted to these thefts. All vehicles have been recovered and the [D]efendant assisted in the recovery of other property. The officer feels probable cause exists and therefore made the case and swore out the warrants against [the Defendant].

Based on this conduct, the Defendant pled guilty to three counts of theft of property valued between $10,000 and $60,000; one count of theft of property valued between $1000 and $10,000; and five counts of burglary of a motor vehicle. The Defendant agreed to a ten-year sentence, with the trial court to determine the manner in which he would serve this sentence.

The trial court held a sentencing hearing, where the following evidence was entered: The State introduced a pre-sentence report, which indicated the Defendant was thirty-two years old when he committed the crimes in this case and thirty-three at the time of sentencing. According to the report, the Defendant's mother and brother died when he was three years old, and he grew up being "ridiculed," "abused," and "picked on" by peers and members of his family. At sixteen, the Defendant began to use alcohol and he continued to use on a weekly basis. He reported occasional use of cocaine and "zanes." The report included a notation that the Defendant was "suspected" of gang affiliation with the "[B]loods." The Defendant was expelled from high school in tenth grade but obtained his G.E.D. in 2003. He had been diagnosed with major depression, anxiety, and post-traumatic

2

stress disorder. The Defendant was, at the time of sentencing, married to his second wife, and he had one son and two daughters. The Defendant reported holding various jobs between 1998 and the sentencing hearing in this case. The Defendant was laid off from Creative Wholesale in Smyrna, Tennessee, shortly before he committed the crimes in this case. At the time of sentencing, he was working as a sub-contractor for Quality Floors of Nashville.

The presentence report indicated the Defendant had a lengthy criminal history. Between the ages of eighteen and twenty-six, he committed at least twenty-five felony offenses as well as a number misdemeanor offenses, including criminal impersonation, resisting arrest, contributing to the delinquency of a minor, and several driving infractions. His felony convictions include: two convictions for possession of less than .5 grams of a Schedule II drug; ten convictions for burglary of a motor vehicle; five convictions for theft of property between $1000 and $10,000; one conviction for assault; one conviction for theft of property between $500 and $1000; three convictions for aggravated burglary; and two convictions for theft of property up to $500. In addition to these convictions, the Defendant had been arrested on various other charges, including criminal homicide and aggravated assault, which were subsequently dismissed or retired. The report showed the Defendant has violated sentences of alternative release on at least three occasions.

The pre-sentence report includes a statement given by the Defendant of the events leading up to the thefts and burglaries he committed in this case. He first apologized to the victims and to his family. Next, he explained that being laid off from Creative Wholesale left him with no money to buy food and diapers for his infant daughter. Having no one from whom to borrow money, he decided to do "what [he] said [he] would never do again . . . take something from another human being . . . ." Although he acknowledged his actions were not "right," he insisted he stole not for his "personal gain" but to feed his family. He emphasized that, in the years immediately prior to the thefts in this case, he had attempted to lead a law-abiding life and provide for his family. Finally, while the Defendant accepted responsibility for his conduct and convictions, he urged the trial court to grant him a community corrections sentence so that he could continue to provide for his family.

Detective Lisa House of the Sumner County Sheriff's office testified that in May 2009 she and another detective were assigned to investigate a series of car burglaries and thefts in two subdivisions in Hendersonville and Goodlettsville. The Defendant's name "came up" in the course of their investigation, they contacted him, and he agreed to be interviewed. During this interview, he admitted to the thefts. He admitted to stealing three vehicles, which he told detectives he used to travel around his neighborhood. The detective testified that the Defendant did not damage any of the vehicles he stole and that he was "very forthcoming" in the interview. The Defendant assisted the detectives in recovering the vehicles he had

stolen and disclosed to them that he was storing other stolen property from these criminal incidents in his home.

Jamie Lee Romines, who grew up with the Defendant, testified that he had known the Defendant for seventeen years. He said that the Defendant, despite his criminal record, should receive an alternative sentence in order to be able to provide for his family. He testified that he believed the Defendant committed the crimes in this case only to provide for his children.

Terry Allison, owner of Quality Floors, testified that he employed the Defendant for more than a year. He described the Defendant as "the best employee [he'd] ever had." Allison said the Defendant had earned his trust despite his criminal record. On cross-examination, Allison testified that the Defendant, though he started earning only ten to eleven dollars per hour, was presently earning $1000 per week. He said that part of the Defendant's job responsibility was to collect money from customers, and the Defendant had never "come up a dollar short" in performing this duty.

The Defendant testified, largely echoing the statement he gave to the officer preparing his presentence report. He testified that his troubled childhood led him to lead a dangerous lifestyle and that he reached a point where he did not care whether he lived or died. He explained, however, that his attitude had changed after he married his wife and had two children. He said he committed the thefts in this case only to provide for his family.

On cross-examination, the Defendant said that, at the time he committed the crimes in this case, several years had passed since he had been incarcerated and he had recently finished serving a probationary sentence. He again emphasized that, though he attributed his behavior to his financial distress, he did not mean to imply that stealing was "okay." He again solicited the court to grant him an alternative sentence, promising to do "everything [he could] not to come in front of [the trial court again]."

At the conclusion of the hearing, the trial court ordered the Defendant to serve ten years in the Tennessee Department of Correction. It is from this judgment that the Defendant now appeals.

### III. Analysis

The Defendant contends the trial court improperly denied his request for an alternative sentence because it did not take into account certain mitigating circumstances he argues apply to his case. Specifically, he argues the trial court failed to take into account: mitigating factor (1), that his conduct did not threaten serious bodily injury; mitigating factor (7), that

4

a desire to provide necessities for his family motivated the Defendant's criminal behavior; mitigating factor (10) that the Defendant assisted the authorities in locating or recovering property involved in the crime; and the "catch-all" mitigating factor (13), in that his employer indicated the Defendant was a good employee whom he would be happy to employ upon his release.  *See* T.C.A. § 40-35-113(1), (7), (10), and (13) (2009).

The State responds that the trial court properly denied alternative sentencing based upon the factors Tennessee Code Annotated section 40-30-103 directs courts to consider in determining whether confinement is necessary.  The State argues that the lack of explicit consideration of the mitigating factors cited by the Defendant in the trial court's ruling does not affect the soundness of the trial court's judgment.

When a defendant challenges the length, range, or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct."  T.C.A. § 40-35-401(d).  As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper.  T.C.A. § 40-35-401, Sentencing Comm'n Cmts.  This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the 1989 Sentencing Act, T.C.A. section 40-35-103 (2009), we may not disturb the sentence even if a different result was preferred.  *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001).

Due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing.  *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6) (2009)).  Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary."  *Id*. (footnote omitted).  T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512.  Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider " them.  T.C.A. § 40-35-102(6) (emphasis added).

In conducting a de novo review of a sentence, we must consider:  (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any

statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210(b) (2009); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). We must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103(5) (2009).

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(A)-(C) (2009).

If a defendant seeks probation, then that defendant bears the burden of "establishing [his] suitability." T.C.A. § 40-35-303(b) (2009). As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303 (2009), Sentencing Comm'n Cmts.

The Tennessee Community Corrections Act was enacted in 1985. One of the purposes of the Act was "to establish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." T.C.A. § 40-36-103(1) (2006); *see State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Under the Act, a court is authorized to sentence an eligible defendant, as defined in Tennessee Code Annotated section 40-36-106, to "any appropriate community-based alternative to incarceration provided in accordance with the terms of this chapter, and under such additional terms and conditions as the court may prescribe, in lieu of incarceration in a state penal institution or local jail or workhouse." T.C.A. § 40-36-106(e)(1) (2006).

A defendant must meet the following factors to be eligible to serve his sentence within a community corrections program:

(B) Persons who are convicted of property-related, or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F) Persons who do not demonstrate a pattern of committing violent offenses
. . . .

T.C.A. § 40-36-106(a)(1) (2006). A trial court retains discretion to deny community corrections if it finds the sentencing principles to require confinement. *State v. Kendrick*, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999).

In this case, the Defendant agreed to a ten-year sentence. At the conclusion of the hearing to determine the manner of service of his sentence, the trial court first noted that it had considered the evidence presented at the sentencing hearing, the principles of sentencing, the nature and characteristics of the criminal conduct involved, the Defendant's various statements, the Defendant's potential for rehabilitation, and the effect confinement would have upon the Defendant's dependants. Based on these considerations, the trial court found that all of the section 40-35-103 factors indicated confinement was necessary. It found that "confinement was necessary to protect society by restraining a defendant who has a long history of criminal conduct" because the Defendant had committed well over twenty felonies in five separate counties. *See* T.C.A. § 40-35-103(A). In finding that confinement was necessary "to avoid depreciating the seriousness of the offense" or "particularly suited to provide an effective deterrence to others likely to commit similar offenses," the court explained that the Defendant's extensive record again required confinement insofar as it would make his crimes seem without consequence were the court to grant alternative release:

Now, how in the world are we going to provide an effective deterrent to anyone that does this and we don't impose some punishment when that individual has not one, not two, not three, not four, not five, not 20, not 21, not 22, [but] 31 felony convictions? There comes a point when you've got to protect citizens.

7

*See* T.C.A. § 40-35-103(B). Based upon the Defendant's three past failures to comply with community corrections sentences, the trial court found that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." *See* T.C.A. § 40-35-103(C).

The trial court noted that, had the Defendant entered an open plea, it would have imposed consecutive sentencing based upon the Defendant's extensive criminal record, which would have resulted in a sentence of well over thirty years. Based upon his relatively reduced sentence, the trial court found that the sentence imposed was "no greater than that deserved for the offense." In conclusion, the trial court explained confinement was necessary not only because the Defendant had an "incredible" criminal record, but also because the Defendant believed and repeatedly stated during the sentencing hearing that his actions were necessary. Stating that the Defendant was "a menace to society" and that "even by the words of [his] own mouth," the Defendant had learned nothing "about other people," the trial court denied alternative sentencing.

The trial court acted within its discretion when it denied alternative sentencing. Its findings with regard to the three factors set out in section 40-35-103 were sound. First, the Defendant has at least twenty-five felony convictions and several misdemeanor convictions, as well as admitted alcohol and illicit drug use throughout his teens and adulthood. Thus, the record does not preponderate against the court's finding that the Defendant's long history of criminal conduct required confinement in this case. The Defendant's lengthy record as well as his repeated avowals of having acted only for his family's well-being similarly supports the trial court's finding that, in order to deter individuals in similarly trying financial situations from committing like acts, confinement was necessary. Finally, because the record establishes that the Defendant violated at least three community corrections sentences, the record does not preponderate against the trial court's finding that the confinement was necessary because the Defendant had frequently failed to comply with measures less restrictive than confinement.

The trial court's consideration of the factors listed above was alone sufficient to support its denial of alternative sentencing. *See* T.C.A. § 40-35-103. However, the Defendant argues the trial court should have given greater attention and weight to certain mitigating factors he argues apply to his case. Though consideration of the statutory mitigating factors was not necessary to determine the manner of service of the Defendant's sentence, the trial court took into account several of the circumstances the Defendant argues support application of four mitigating factors. The trial court explicitly credited the Defendant with desiring to provide for his family and with maintaining steady employment. It explained, however, that the persistent nature of the Defendant's criminal behavior as well as his attempt to explain away his most recent behavior by citing his financial distress

required confinement:

> This is absolutely pitiful, 31 felony convictions, five different counties. And you know what is sad to me, I've got at least two witnesses that have come up here today, including the [D]efendant, who stated, quote, I did what every other man would do, unquote. That's a sad commentary on society, and I grieve over that attitude for people to actually think that you can go out and rob and steal others to satisfy your own personal desires.

Thus, in rejecting a sentence of alternative release, the trial court took into account not only the statutorily-mandated considerations, but also several of the mitigating circumstances the Defendant complains were overlooked. As for the Defendant's objection that the trial court failed to explicitly state the weight it assigned these circumstances, because the trial court was under no obligation to even consider them, its silence as to their weight was not error.

The Defendant failed to carry his burden of proving his suitability for probation. *See* 40-35-303(b). As discussed above, the trial court made sound findings of fact in support of its consideration of these factors, we presume that its determination that confinement was appropriate is correct. *See* T.C.A. § 40-35-401(d). As such, the court properly denied all forms of alternative sentencing. *Kendrick*, 10 S.W.3d at 656. Thus, we conclude that the trial court did not err when it denied the Defendant an alternative sentence. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and applicable law, we conclude the trial court properly denied alternative sentencing in this case. As such, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE